KENNETH E. KELLER (SBN 71450) kkeller@ksrh.com
GARTH A. ROSENGREN (SBN 215732) grosengren@ksrh.com
KELLER, SLOAN, ROMAN & HOLLAND LLP
555 Montgomery Street, 17th Floor
San Francisco, California 94111
Telephone:     (415) 249-8330
Facsimile:      (415) 249-8333

Attorneys for Plaintiff RONPAK, INC.

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONPAK, INC., a New Jersey corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>ELECTRONICS FOR IMAGING, INC., a Delaware corporation,<br><br>       Defendant. | Case No.<br><br>**COMPLAINT FOR**<br>**(1) FRAUDULENT INDUCEMENT;**<br>**(2) NEGLIGENT MISREPRESENTATION;**<br>**(3) BREACH OF CONTRACT; AND**<br>**(4) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, et seq.** |

Plaintiff, RONPAK, INC., a New Jersey company ("Ronpak") hereby sues Defendant ELECTRONICS FOR IMAGING, INC. a Delaware corporation ("EFI and/or Defendant") as follows:

**JURISDICTION AND VENUE**

1.      Defendant is a corporation incorporated under the laws of Delaware and having a principal place of business in Fremont, California. Plaintiff is a corporation incorporated under the laws of New Jersey and having a principle place of business in Shreveport, Louisiana. The amount in controversy exceeds $75,000 exclusive of fees and costs. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

2. This Court has supplemental jurisdiction of the state statutory claim herein under 28 U.S.C. § 1367(a).

3. Defendant is subject to personal jurisdiction in this Judicial District, because they direct business activities toward and conduct business with consumers within the State of California and this Judicial District. In addition, Defendant has consented to this Court's jurisdiction pursuant to section 19(f) of the parties' Software License Agreement, as alleged herein.

4. Venue is proper in this Court pursuant 28 U.S.C. § 1391 since the named Defendant's conduct business in this Judicial District. In addition, Defendant has consented to this Court's jurisdiction pursuant to section 19(f) of the parties' Software License Agreement, as alleged herein.

## THE PARTIES

5. Ronpak is a New Jersey company with its headquarters in Shreveport, Louisiana. Ronpak manufactures printed packaging, such as sheets/wraps, carryout bags and pinch bottom bags for the QSR, pharmaceutical and retail segments in three facilities located in Shreveport, Louisiana; South Plainfield, New Jersey; and Mira Loma, California. Ronpak distributes its products in high volume to customers nationwide.

6. Plaintiff is informed and believes that EFI is a Delaware corporation with its headquarters in Fremont, California. EFI licenses various software products to businesses for a number of uses including business workflow management.

## COMMON FACTUAL ALLEGATIONS

7. One of EFI's products is called EFI Radius, which is described by EFI as an "enterprise resource planning" ("ERP") solution and a "management information system" ("MIS"). EFI markets EFI Radius specifically to the packaging industry as a "purpose-built estimating system" that makes "sophisticated price modeling capabilities available to fine-tune the prices to be quoted to the customer." Electronics for Imaging, *Selecting an ERP System for Packaging and Printing Operations: A Guide for Executives*, at 4-5 (2012). EFI claims that "[b]ecause EFI Radius was specifically designed for the needs of the printing and converting make-to-order environment, producing a manufacturing order for a new product is efficient and straightforward." *Id*.

8. Beginning in or around October of 2012, Ronpak began considering its options for

meeting its ERP needs. EFI Radius was one to the products it considered. The primary person at EFI that Ronpak dealt with was Mr. Stan Usry ("Usry").

9. On October 23, 2012, Usry provided an online "overview demo" of EFI Radius to Ronpak via webex. Messrs. Frank Flood, Bill White, and Bob Bowers attended that demo for Ronpak. In that demo, EFI highlighted specific abilities of EFI Radius, including full traceability of product components.

10. On or about December 19, 2012, Mr. Bob Bowers of Ronpak requested what he referred to as a "Statement of Work" from Mr. Usury that would describe in detail how EFI would implement EFI Radius at Ronpak should Ronpak decide to license that product. In response, Usry emailed to Mr. Bowers an Executive Overview, which he claimed "details [EFI's] implementation process," along with two documents described as "Sample Project Plans," which Usry represented were project Plans for a "project similar to [Ronpak's]."

11. In the Executive Overview, EFI represents the "foundation" of EFI Radius as including the following components "Company & System," "Estimating," "Job Costing," "Production," "Purchasing," and "Inventory Management."

  a. Under "Company & System," EFI represented its product was designed for "label and packaging companies of all sizes" because of its ability to, among other things, provide "provide support for multiple currencies, languages, and user-defined units of measure."

  b. The "Estimating" component of EFI Radius is described as allowing the user to use sales estimates to generate sales orders and production estimates. With EFI Radius's "estimating" function, the user will supposedly be able to "determine costs quickly and accurately with detailed machine make ready and run calculations based on your specific machine standards."

  c. EFI Radius's "Job Costing" functionality is described as the ability to collect data regarding "actual costs for every job as they move through your production facility" by automating the "the material consumption reporting process for boards, ink, coatings and all other stocked materials" thereby "more accurately

3

tracking job material costs."

    d. "Production" is described as the focus of the EFI Radius ERP System. It "depends on real-time, accurate information, which is pulled from the other modules in the EFI Radius system and those modules depend on accurate production information." EFI Radius's "production" capabilities include the ability to track job status and to trace products from "their origin as raw materials and continuing through each production and shipping step."

    e. With its "Purchasing" functionality, EFI Radius supposedly "automates and aggregates the management of procurement orders" so that the user can anticipate its raw material needs based on its needs.

    f. "Inventory Management" describes EFI Radius's purported ability to manage a user's stock and issue materials to jobs as needed, "helping to keep accurate track of stock and materials to run a job." The user should be able to verify and report inconsistencies between actual inventory levels and system levels.

12. The Sample Project Plans sent to Mr. Bowers by Usry indicated that, from "Project Kickoff" to "Go Live" would take less than seven months.

13. Representatives of EFI and Ronpak met on December 20, 2012 at the offices of Specialty Printing in East Windsor, Connecticut. Specialty Printing manufactures pressure sensitive labels for a variety of uses. This meeting was arranged by Usry to show Ronpak an operating installation of EFI Radius. The main focus of the meeting was to have Specialty Printing discuss their installation, how they use the software and answer any general questions Ronpak may have had. A particular point of emphasis at the meeting was the need for the licensee to dedicate sufficient resources to implementing EFI Radius.

14. Relying upon EFI's representations regarding the capabilities of EFI Radius and the time and resources Ronpak would need to dedicate to the implementation of EFI Radius, Ronpak agreed to enter into a license agreement with EFI Radius, which was executed on January 11, 2013, a copy of which is attached hereto as Exhibit A. Likewise, based on EFI's repeated emphasis on the licensee dedicating adequate manpower to the configuration and implementation of EFI Radius,

4

Ronpak tasked a number of employees and executives with the responsibility of working with EFI to get EFI Radius up and running.

15. Over the ensuing months, Ronpak began to realize that EFI Radius could not, in fact, provide many of the functions that EFI represented it could and that Ronpak needed. Moreover, Ronpak is informed and believes that EFI knew that its product could not perform as EFI represented it would at the time EFI made those representations. For example:

   a. In the October 23, 2012 demo, EFI represented that its product allowed the user to trace consumables. Likewise, the "Executive Overview" provided by EFI states that the "job costing" foundational function of EFI Radius automatically tracks materials consumed during a job, including ink. However, when Ronpak sought to track ink consumption during the implementation and after having licensed the product, it was discouraged from doing so because none of EFI's other customers did it and it would cause serious challenges to the implementation.

   b. In the October 23, 2012 demo, EFI represented that its product allowed the user to receive "real time" updates on jobs. Likewise, the "Executive Overview" provided by EFI states that EFI Radius's 'Shop Floor Data Collection" module (an add-on to EFI Radius, which Ronpak purchased) allows the user to "track updates on the shop floor in real time." However, Ronpak learned after licensing the product that a number of the reports provided by the product cannot, in fact, be provided in real time because the product requires that they be reviewed, approved, and accepted before the data is made available – something EFI knew or should have known

   c. During Ronpak's meetings with Usry in November and December of 2012 prior to licensing EFI Radius, Bob Bowers informed Usry that one of Ronpak's goals with a new ERP solution was to speed-up the delivery of accurate information to its managers and supervisors regarding production efficiency. Usry advised Mr. Bowers that EFI Radius could readily provide that information due to the massive amount of machine-level data collected by the software. Usry claimed that EFI's

"Business Intelligence" add-on to EFI Radius could then generate executive reports and create of ad hoc reports using that data. The Executive Overview repeats Usry's representations when it describes the "Business Intelligence" module as providing "a high level of data access and visibility" and as a toll for organizing and presenting that data for "immediate on-screen and on-line review." Ronpak purchased the Business Intelligence module with its EFI Radius license. However, Ronpak found at the outset of the attempted implementation of EFI Radius that the machine level data it collected was inaccurate because the software could not be calibrated to calculate production units properly. Consequently, the Business Intelligence model was useless.

    d. During Ronpak's meetings in November and December of 2012, Usry emphasized EFI Radius's ability to perform using multiple units of measure ("UOM"), its ability to provide full traceability of components, and that EFI Radius was specifically designed for the printing and packaging industry. Usry explained that, for example, a user could order and receive raw material inventory based on an amount in pounds, but then maintain that material in inventory and eventually consume the material in production based on units of 1000 sq. ft. ("MSF"). Alternatively, the user could define its own UOM of 1000 ("m's") to be used as a standard UOM for production of finished goods inventory. Full traceability would allow for detailed lot control throughout the entire production and shipping process. And, because it was designed for the printing and packaging industry, Radius would be able to handle Ronpak's single step in-line converting process, which involves taking a roll of paper ("roll stock") and converting it directly into bags without the separate step of cutting the paper into pre-measured sheets. The Executive Overview provided by EFI echoes Usry's representations and states that EFI Radius supports "user-defined units of measure", "Full Traceability" and fits the "unique processes of printing and packaging companies." However, the product was never able to operate using the

"m's" UOM for finished goods. Full traceability was not obtainable and EFI Radius could handle single step in-line converting. That is a fundamental flaw in EFI Radius because, without the ability to handle Ronpak's in-line converting process and operate in m's, the data being generated, collected, and relied upon for all other related functions was inaccurate, and rendered those functions useless. EFI was well-aware of Ronpak's practice of using in-line processing for its products throughout the parties' negotiations and yet repeatedly represented that Radius would perform for Ronpak in ways that EFI knew or should have known it could not.

16. As noted above, EFI represented to Ronpak in EFI's "Sample Project Plan" that it could take as much as seven months for the EFI Radius to be configured, implemented, and to be deployed (or "Go Live") for Ronpak. After signing the license agreement, EFI and Ronpak agreed to a "go live" date six months later, on July 1, 2013. That date passed without EFI Radius being remotely ready for use by Ronpak. Consequently, the "go live" date was subsequently revised to September 3, 2013. Again, EFI failed to deliver functioning software to Ronpak. In fact, the failure of EFI Radius was so complete that it was never even tested in a production environment at Ronpak; rather, it began on an emulator, and never made it beyond that.

17. Finally, on January 16, 2014, Ronpak notified EFI that it was in breach of the license Agreement. Unsurprisingly, EFI was unable to remedy its breach, and Ronpak terminated the license agreement.

18. Ultimately, Ronpak spent a year waiting for a functioning product. During that time, Ronpak suffered the cost of considerable lost employee-hours on top of the license, maintenance, and service fees paid to EFI, the cost of hardware purchased from EFI for use with EFI Radius, and the cost of replacement software to perform the job EFI's product should have.

7

COMPLAINT

## COUNT I

## FRAUDULENT INDUCEMENT

19. Plaintiff re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs of the Complaint as though set forth here in full.

20. Defendant made numerous material representations and promises to Plaintiff regarding the functionality of its software product, including its ability to trace consumables, to deliver real-time reports to Plaintiff, to collect machine level data and render that visible to Plaintiff, and to function using multiple units of measure. In addition, Defendant represented that it would take roughly seven-months to deploy that software to Plaintiff with those functions.

21. Further, Defendant concealed from Plaintiff material facts regarding EFI Radius's functionality, or lack thereof, including its inability to function using multiple units of measure or in an in-line processing environment, despite Defendant having exclusive knowledge of those facts and having a duty to disclose them to Plaintiff by virtue of Defendant's exclusive knowledge of those facts, active concealment of those facts, and incomplete representations regarding the functionality of EFI Radius.

22. Defendant knew each of its representations and promises was false at the time it was made, or made each of them recklessly without regard for its truth, and made each of them without any intention of providing the product described in the time frame promised. Nonetheless, Defendant made each of those representations and promises in an effort to induce Plaintiff to license its product.

23. Defendant intended that Plaintiff rely on each of its representations in making its decision whether or not to licensed Defendant's product.

24. Plaintiff reasonably relied upon each of Defendant's representations, and Plaintiff was unaware of facts concealed from it. Had Plaintiff known the facts concealed from it by Defendant or of the falsity of Defendant's representations, Plaintiff would not have entered into the license agreement with Defendant.

25. Plaintiff was harmed by Defendant's representations and concealment, each of which was a substantial factor in causing that harm.

26. As a result, Plaintiff has suffered monetary damages, according to proof at trial.

WHEREFORE, Plaintiff prays for judgment and relief, including exemplary damages, as set forth more fully below.

## COUNT II

## NEGLIGENT MISREPRESENTATION

27. Plaintiff re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs of the Complaint, as though set forth here in full.

28. Defendant made numerous material representations and promises to Plaintiff regarding the functionality of its software product, including its ability to trace consumables, to deliver real-time reports to Plaintiff, to collect machine level data and render that visible to Plaintiff, and to function using multiple units of measure. In addition, Defendant represented that it would take roughly seven-months to deploy that software to Plaintiff with those functions.

29. Further, Defendant concealed from Plaintiff material facts regarding EFI Radius's functionality, or lack thereof, including its inability to function using multiple units of measure or in an in-line processing environment, despite Defendant having exclusive knowledge of those facts and having a duty to disclose them to Plaintiff by virtue of Defendant's exclusive knowledge of those facts, active concealment of those facts, and incomplete representations regarding the functionality of EFI Radius.

30. Defendant had no reasonable grounds for believing that any of its representations were true at the time any of them was made, but nonetheless did so in an effort to induce Plaintiff to license its product.

31. Defendant intended that Plaintiff rely on those representations in making its decision whether or not to licensed Defendant's product.

32. Plaintiff reasonable relied upon Defendant's representations, and Plaintiff was unaware of facts concealed from it. Had Plaintiff knows of the facts concealed from it by Defendant or of the falsity of Defendant's representations, Plaintiff would not have entered into the license agreement with Defendant.

33. Plaintiff was harmed by Defendant's representations and concealment, each of which

was a substantial factor in causing that harm.

34. As a result, Plaintiff has suffered monetary damages, according to proof at trial.

WHEREFORE, Plaintiff prays for judgment and relief as set forth more fully below.

## COUNT III

## BREACH OF CONTRACT

35. Plaintiff re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs of the Complaint, as though set forth here in full.

36. Plaintiff has, at all times, performed all obligations imposed upon it under the license agreement between it and Defendant.

37. Plaintiff has not excused, waived, or otherwise released Defendant from its obligations to deliver functional software as promised in the license agreement, to configure the software and/or deliver software that is configurable by either party so as to function for Plaintiff, to implement the software, and to deliver the services described in the contract (including the training of Plaintiff's employees in the use of the software).

38. Defendant has failed to meet any of its obligations under the license agreement.

39. Furthermore, Defendant has breached the covenant of good faith and fair dealing inherent in the license agreement. Despite having been paid all amounts due under the parties' contract, Plaintiff has not received the benefit of the bargain it made with Defendant. Specifically, Plaintiff has not received and Defendant has not implemented for Plaintiff in a reasonable and timely fashion functional software licensed by Plaintiff.

40. Defendant's various breaches have caused Plaintiff significant monetary damages, according to proof at trial.

WHEREFORE, Plaintiff prays for judgment and relief as set forth more fully below.

## COUNT IV

## CALIIFORNIA UNFAIR COMPETITION

## PURSUANT TO CALIFORNIA'S BUSINESS AND PROFESSIONS CODE §17200

41. Plaintiff re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs of the Complaint as though set forth here in full.

42. In violation of California's statutory prohibitions against unlawful and fraudulent business practices, Defendant induced Plaintiff to pay for a license to software that Defendant knew or should have known was not suited to Plaintiff's business practices, that would not deliver to Plaintiff the benefits or functionality that the Defendant represented the software could provide, and that could not be configured to work for Plaintiff in a reasonable time. Defendant's representations and omissions were likely to deceive members of the public. Defendant's representations and omissions were a substantial factor in Plaintiff's decision to license the software.

43. As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered damage, including lost profits and increased costs.

WHEREFORE, Plaintiff prays for judgment and relief as set forth more fully below.

## **PRAYER FOR RELIEF**

44. WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, jointly and severally, against Defendant as follows:

a. restitution in an amount to be determined at trial;

b. compensatory damages, general and/or special, directly and proximately resulting from Defendant's wrongful acts, in an amount to be determined at trial;

c. exemplary damages against Defendant in an amount to be determined at trial

d. costs of suit;

e. awardable interest at the maximum legal rate; and

f. entry of an Order for any further relief as the Court may deem just and proper.

Dated: September 5, 2014         KELLER, SLOAN, ROMAN & HOLLAND LLP

By: _____/S/_____
    Kenneth E. Keller
    Attorneys for Plaintiff RONPAK, INC.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury on any and all issues triable to a jury.

Dated: September 5, 2014            KELLER, SLOAN, ROMAN & HOLLAND LLP

By: _____/S/_____
Kenneth E. Keller
Attorneys for Plaintiff RONPAK, INC.